510 A.2d 1078
# William F. ASHBURN II

v.

# ANNE ARUNDEL COUNTY, Maryland et al.

## No. 10, Sept. Term, 1985.

Court of Appeals of Maryland.

July 10, 1986.

618

Leonard A. Orman, Baltimore, for appellant.

Karen A. Murphy Jensen, Asst. County Sol. (Stephen R. Beard, County Sol. and Robert C. Wilcox, Deputy County Sol., on brief), Annapolis, for appellee.

Before SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and JAMES C. MORTON, Jr., (Retired, Specially Assigned), JJ.

COLE, Judge.

In this case, we must determine whether a police officer may be held liable to a person injured by a drunk driver where the officer detected the driver's condition before the accident but failed to stop and detain him.

The parties have agreed to the following facts. On February 18, 1983, Officer Dennis Freeberger of the Anne Arundel County Police Department found John J. Millham in a pickup truck on the parking lot of a 7–11 store. Millham was intoxicated and sitting behind the wheel of the truck with its engine running and lights on. It is agreed

that Millham was driving the vehicle and that, under Maryland law, Millham could have been charged with drunk driving.

Apparently noticing Millham's condition, Officer Freeberger told Millham to pull his truck to the side of the lot and to discontinue driving that evening. As soon as Officer Freeberger left the scene, however, Millham drove the truck away from the lot, proceeded a short distance and collided with appellant, John F. Ashburn, II, a pedestrian. Ashburn, who lost his left leg and suffered other injuries, brought suit against Millham, Officer Freeberger, Anne Arundel County and the Police Department in the Circuit Court for Anne Arundel County. He based his claim against the latter three on the theory that the police had a mandatory duty to detain all suspected drunk drivers under Md. Code (1977, 1984 Repl.Vol.), § 16–205.1(b)(2) of the Transportation Article. The circuit court granted appellees' Motion to Dismiss and, in an opinion and order dated October 19, 1984, held that Anne Arundel County Police Department was not a separate legal entity, that Officer Freeberger and Anne Arundel County were immune from civil suit, and that Officer Freeberger owed no special duty to appellant. Appellant filed a timely appeal. We granted certiorari on our own motion before consideration by the intermediate appellate court.

Appellant argues that Officer Freeberger is not immune from suit under the doctrine of public official immunity because Freeberger negligently failed to perform the mandatory (as opposed to discretionary) act of detaining a drunken driver. Appellant also argues that, under the circumstances of this case, a special duty was imposed upon Officer Freeberger to protect appellant. Appellees respond that the doctrine of public official immunity precludes suit by appellant against Officer Freeberger. Furthermore, appellees argue, even if public official immunity is unavailable to Freeberger, the officer owed no special duty to Ashburn to protect him from injuries sustained as a result of the

accident caused by defendant Millham. Appellees therefore maintain that the cause of action in negligence must fail.

## I

It was generally held in American courts prior to the mid-part of this century that all public employees were liable for their own torts. *See Prosser and Keeton on Torts* § 132 (W. Keeton 5th ed. 1984); 63A Am.Jur.2d *Public Officers and Employees* § 358 (1984). This Court recognized before the turn of the century, however, the importance of shielding a public officer from liability where the officer's alleged negligence arose from the performance of his job in a manner which involved judgment and discretion. *Cocking v. Wade,* 87 Md. 529, 40 A. 104 (1898).

*Cocking* arose from a suit against the bond of a sheriff of Charles County for the sheriff's alleged negligence in guarding a prisoner. In the face of danger to the prisoner from mob violence, the sheriff moved the prisoner first to a jail in Baltimore City and then again to a dilapidated building which had been used as a jail in Charles County. While the prisoner was jailed in the Charles County building, a change of venue was granted, which increased unrest among the citizens of Charles County. Although the prisoner and his counsel repeatedly asked the sheriff to move the prisoner to a safer jail, the sheriff refused. Shortly thereafter, the prisoner was taken from the jail by a group of unknown men and hanged. This Court held that no action would lie against the sheriff by the children of the prisoner. The Court explained that the manner in which a sheriff carries forth his job function with regard to a prisoner:

> may often be a matter of great difficulty, and one calling for the exercise of much judgment and high degree of courage. He will be required to take careful account of all the circumstances that surround him, estimate in cases of outside attack the forces he must encounter, and compare them with his means of defense, and after due deliberation, determine what course is best for him to

pursue. If he does this honestly, with a full purpose to perform his whole duty, even though he make a mistake whereby a prisoner is injured, it would be monstrous to hold him civilly liable for damages to such prisoner. "A public officer is not liable to an action, *if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion, even though an individual may suffer by his mistake.* A contrary principle would, indeed, be pregnant with the greatest mischief."

*Id.* at 541, 40 A. at 106 (citations omitted, emphasis supplied).

Since *Cocking,* the rule which we have applied to tort claims against a governmental representative is that the actor will be relieved of liability for his *non-malicious* acts where: (1) he "is a *public official* rather than a mere *government employee or agent;* and (2) his tortious conduct occurred while he was performing *discretionary,* as opposed to *ministerial,* acts in furtherance of his official duties." *James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980) (emphasis in original). *See also Bradshaw v. Prince George's County,* 284 Md. 294, 303, 396 A.2d 255, 261 (1970), overruled in part on other grounds in *James, supra; Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 346–47, 278 A.2d 71, 74 (1971); *Duncan v. Koustenis,* 260 Md. 98, 104, 271 A.2d 547, 550 (1970); *Clark v. Ferling,* 220 Md. 109, 113–14, 151 A.2d 137, 139 (1959).

We now turn to an analysis of the case sub judice. Clearly, Officer Freeberger is a public official when acting within the scope of his law enforcement function. *See Bradshaw, supra,* 284 Md. at 302, 396 A.2d at 261; *Robinson, supra,* 262 Md. at 347, 278 A.2d at 74. The question we must resolve, then, is whether Officer Freeberger was acting in a discretionary capacity when he encountered the drunk driver.

In addressing the difference between discretionary and ministerial actions, our predecessors noted in *Schneider v. Hawkins*, 179 Md. 21, 25, 16 A.2d 861, 864 (1940):

> The term "discretion" denotes freedom to act according to one's judgment in the absence of a hard and fast rule. When applied to public officials, "discretion" is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience, and uncontrolled by the judgment or conscience of others.

Almost any action, however, may involve the use of discretion. Thus, we noted in *James, supra*, 288 Md. at 327, 418 A.2d at 1180:

> When attempting to classify the particular actions of a public official, a court should be careful not to let the mere fact that decisions are made in performing the questioned task be determinative of whether liability attaches to the conduct, for "[i]n a strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion." *Swanson v. United States*, 229 F.Supp. 217, 219–20 (N.D.Cal.1964). Or as has been otherwise expressed: "it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." *Johnson v. State*, 69 Cal.2d 782, 447 P.2d 352, 357, 73 Cal.Rptr. 240 (1968) (en banc). *Thus, an act falls within the discretionary function of a public official if the decision which involves an exercise of his personal judgment also includes, to more than a minor degree, the manner in which the police power of the State should be utilized.* [Emphasis supplied.]

The *James* Court went on to state that in the case before it, the driving of an emergency vehicle involved only to a "minimal degree, if at all, the exercise of discretion with regard to the State's sovereignty." 288 Md. at 327–28, 418 A.2d at 1180. Thus, the Court held that the operation of

such an emergency vehicle "is not ordinarily a discretionary act for which immunity will shield the driver from liability for negligence." *Id.* at 328, 418 A.2d at 1180–81. The driving of an emergency vehicle, as in *James*, however, is different from making a decision as to whether a citizen shall be apprehended. When a police officer performs this function, he is acting in a discretionary capacity. *Robinson v. Bd. of County Comm'rs, supra,* 262 Md. at 347, 278 A.2d at 74.

Appellant argues, nevertheless, that Officer Freeberger was not acting in a discretionary capacity when he encountered the drunk driver because, appellant contends, Freeberger had a mandatory (and thus purely ministerial) duty to detain the drunk driver in accordance with § 16.205.-1(b)(2) of the Transportation Article, which reads:

Except as provided in subsection (c) of this section, *if a police officer stops or detains any individual* who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while intoxicated or while under the influence of alcohol and who is not unconscious or otherwise incapable of refusing to take a chemical test for alcohol, the police officer shall:

(i) Detain the individual;

(ii) Request that the individual permit a chemical test to be taken of the individual's blood or breath to determine the alcohol content of the individual's blood;

(iii) Advise the individual of the administrative penalties that shall be imposed for refusal to take the test; and

(iv) If the individual refuses to take the test, send a sworn report to the Administration within 72 hours after the detention, that states .... [Emphasis supplied.]

Appellant contends that this section prescribes a mandatory procedure for the handling of drunk drivers and that because Freeberger failed to carry forth this mandatory duty, he is liable for all results which flow from his error.

Appellant points to the word "shall" in § 16–205.1(b)(2), and he argues that this word placed a mandatory duty upon Freeberger to stop, detain and administer sobriety tests to Millham. We disagree. What appellant fails to note is that the word "shall" is preceded by the wording "*if* a police officer stops or detains any individual." We believe that this introductory clause makes clear that Freeberger was not required by § 16–205.1(b)(2) to detain Millham (under subsection (i)) or to request that Millham take a chemical test (under subsections (ii)–(iv)).

We have stated time and again that where a statute is plain and unambiguous, we will look no further than the words of the statute to ascertain legislative intent. *State v. Berry*, 287 Md. 491, 413 A.2d 557 (1980); *Collier v. Connolley*, 285 Md. 123, 400 A.2d 1107 (1979); *Mauzy v. Hornbeck*, 285 Md. 84, 400 A.2d 1091 (1979); *Massage Parlors v. City of Balto.*, 284 Md. 490, 398 A.2d 52 (1979). By the plain meaning of this statute, its directives are not invoked *until* the officer "*stops or detains* any individual." In *Willis v. State*, 302 Md. 363, 376, 488 A.2d 171, 178 (1985), we equated the phrase "stop or detain" in § 16–205.1 with the word "apprehension" ( "apprehended" as used in Md. Code (1974, 1980 Repl.Vol.), § 10–303 of the Courts and Judicial Proceedings Article). We held in *Willis* that "an accused is 'apprehended' when a police officer has reasonable grounds to believe that the person is or has been driving a motor vehicle while intoxicated or while under the influence of alcohol and the police officer reasonably acts upon that information by stopping or detaining the person." *Id.* *Webster's Third New International Dictionary* (1981) defines the verb "detain" as "to hold or keep in or as if in custody ... to restrain especially from proceeding...." [1]

---

1. We note that the word "detain" is used twice in § 16–205.1(b)(2): "if a police officer ... detains ... the police officer shall: (1) detain the individual." We do not believe that the second use of the word detain denotes a meaning different from or more restrictive than the first. *Cf. Willis v. State, supra.* Simply put, the proper interpretation of the section is: if the officer first detains (or stops) one whom he has

The verb "stop" is defined in *Webster's*, in relevant part, as "to keep confined ... to hinder or prevent the passage of ... to close up or block off access to ... to make impassable ... to keep from carrying out a proposed action: hold back: RESTRAIN...."

█ Applying the facts of this case to these definitions, it does not appear that Officer Freeberger stopped or detained the drunk driver. Here, Officer Freeberger "found" the drunk driver sitting in a truck and "told" the driver to pull to the side of the lot and to discontinue driving. Freeberger then left the scene. Freeberger did not confine or restrain Millham. He did not begin an investigation of Millham. Instead, Freeberger told him to drive the car to the side of the parking lot, and then Freeberger left. Because Freeberger did not "stop or detain" Millham, the requirements of § 16–205.1(b)(2) simply were not invoked. Under these facts, § 16–205.1(b)(2) did not make it mandatory that Freeberger detain Millham. Consequently, because Freeberger was acting in a discretionary capacity, he is immune from suit under the circumstances of this case.

## II

Even if we were to assume that § 16–205.1 required Freeberger to stop or detain Millham, i.e., that the statute made Freeberger's actions ministerial, and thus nondiscretionary, appellant's cause would still fail because he did not establish that Freeberger owed him a duty in tort. Judge McSherry stated for this Court over eighty years ago that:

there can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance, before negligence can be predicated of a given act, back of the act must be

---

reasonable grounds to believe is driving while intoxicated, the officer shall *further* detain the individual in order to carry out the procedures prescribed by the section.

sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury.... As the duty varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact, if there has been no breach of duty.

*W. Va. Central R. Co. v. Fuller,* 96 Md. 652, 666, 54 A. 669, 671 (1903). Judge McSherry's comments remain viable today: negligence is a breach of a duty owed to one, and absent that duty, there can be no negligence.

"Duty" in negligence has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Prosser and Keeton, supra,* § 53. There is no set formula for this determination. As Dean Prosser noted, "duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Id.* In broad terms, these policies include: "convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, [and] the moral blame attached to the wrongdoer...." *Id.* As one court suggested, there are a number of variables to be considered in determining if a duty exists to another, such as:

the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 434, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976).

Perhaps among these the factor deemed most important is foreseeability. *See id.* However, "foreseeability" must not be confused with "duty." The fact that a result may be foreseeable does not itself impose a duty in negligence terms. This principle is apparent in the acceptance by most jurisdictions and by this Court of the general rule that there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a "special relationship" exists either between the actor and the third person or between the actor and the person injured. *See Lamb v. Hopkins,* 303 Md. 236, 242–44, 492 A.2d 1297, 1300–01 (1985); *Restatement (Second) of Torts* § 315 (1965); *Scott v. Watson,* 278 Md. 160, 166, 359 A.2d 548, 552 (1976) ("a private person is under no special duty to protect another from criminal acts by a third person, in the absence of statutes, or of a special relationship.").

Thus, we recognize the general rule, as do most courts, that absent a "special relationship" between police and victim, liability for failure to protect an individual citizen against injury caused by another citizen does not lie against police officers. *See Davidson v. City of Westminster,* 32 Cal.3d 197, 649 P.2d 894, 185 Cal.Rptr. 252 (1982); *Trautman v. City of Stamford,* 32 Conn.Supp. 258, 350 A.2d 782 (1975); *Morgan v. District of Columbia,* 468 A.2d 1306 (D.C.1983); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Morris v. Musser,* 84 Pa.Cmwlth. 170, 478 A.2d 937 (1984); *Porter v. City of Urbana,* 88 Ill.App.3d 443, 43 Ill.Dec. 610, 410 N.E.2d 610 (1980); *Dauffenbach v. City of Wichita,* 233 Kan. 1028, 667 P.2d 380 (1983); *Crosby v. Town of Bethlehem,* 90 A.D.2d 134, 457 N.Y.S.2d 618 (1982); *J & B Development Co. v. King County,* 100 Wash.2d 299, 669 P.2d 468 (1983). Rather, the "duty" owed by the police by virtue of their positions as officers is a duty to protect the public, and the breach of that duty is most properly actionable by the public in the form of criminal prosecution or administrative disposition. *See, e.g., Morgan v. District of Columbia, supra,* 468 A.2d at 1311 ("duty to protect individuals from criminal conduct

'is a public duty, for neglect of which the officer is amenable to the public, and punishable by indictment only'", citing *South v. Maryland*, 59 U.S. (18 How.) 396, 403, 15 L.Ed. 433 (1856)); *Shore v. Town of Stonington, supra*, 444 A.2d at 1381–82; *Chapman v. City of Philadelphia*, 290 Pa.Super.Ct. 281, 434 A.2d 753, 754 (1984) (duty of city to provide police protection is a public one); *see also* 2 *Cooley On Torts* § 300, at 385–86 (4th ed. 1932) ("if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed, if at all, in some form of public prosecution."). As the District of Columbia Court of Appeals stated in *Morgan v. District of Columbia, supra*, 468 A.2d at 1311:

> public officials who act and react in the milieu of criminal activity where every decision to deploy law enforcement personnel is fraught with uncertainty must have broad discretion to proceed without fear of civil liability in the "unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949). As the Connecticut Supreme Court recognized the public interest is not served "by allowing a jury of lay (persons) with the benefit of 20/20 hindsight to second-guess the exercise of a police [officer]'s discretionary professional duty. Such discretion is no discretion at all." *Shore v. Town of Stonington*, [187 Conn. 147, 444 A.2d 1379, 1381 (1982)].
>
> \*    \*    \*    \*    \*    \*
>
> [I]f the police were held to a duty enforceable by each individual member of the public, then every complaint—whether real, imagined, or frivolous would raise the spectre of civil liability for failure to respond. Rather than exercise reasoned discretion and evaluate each particular allegation on its own merits the police may well be pressured to make hasty arrests solely to eliminate the threat of personal prosecution by the putative victim. *Porter v. City of Urbana, supra*, 88 Ill.App.3d at 445, 43 Ill.Dec. at 612, 410 N.E.2d at 612. Such a result histori-

cally has been viewed, and rightly so, as untenable, unworkable and unwise.

Furthermore, a policy which places a duty on a police officer to insure the safety of each member of the community would create an unnecessary burden on the judicial system. *See Morgan, supra,* 468 A.2d at 1311; *see also Porter v. City of Urbana, supra,* 43 Ill.Dec. at 612, 410 N.E.2d at 612; *Walters v. Hampton,* 14 Wash.App. 548, 554, 543 P.2d 648, 652 (1975). Under such circumstances, the slightest error of a policeman would give rise to a potential law suit.

Presently, the police officer is subject to disciplinary proceedings or criminal prosecution for any dereliction of duty, *see* Md. Code (1957, 1982 Repl.Vol.), Art. 27, §§ 727 to 734D, and these proceedings are better suited to review charges against the police officer for the breach of a duty which his job, rather than his responsibility as a member of the public, imposes upon him. Moreover, as stated by the District of Columbia Court of Appeals in *Morgan, supra,*

> while public prosecution does little to console those who suffer from the mistakes of police officials, on balance, the community is better served by a policy that both protects the exercise of law enforcement discretion and affords a means of review by those who, in supervisory roles, are best able to evaluate the conduct of their charges.

468 A.2d at 1312.

A proper plaintiff, however, is not without recourse. If he alleges sufficient facts to show that the defendant policeman created a "special relationship" with him [2] upon which he relied, he may maintain his action in

---

2. We also note that under § 315(a) of the *Restatement (Second) of Torts* a duty would be imposed upon an officer to prevent physical harm caused by another to a third person where a special relationship exists between the police officer and the actor. Such special relationships have been found as to: parent and child, master and servant, landowner and licensee, those in charge of persons with known

negligence. *See Restatement (Second) of Torts* § 315(b). This "special duty rule," as it has been termed by the courts, is nothing more than a modified application of the principle that although generally there is no duty in negligence terms to act for the benefit of any particular person, when one does indeed act for the benefit of another, he must act in a reasonable manner. *See Scott v. Watson, supra,* 278 Md. at 170–71, 359 A.2d at 555; *Penna R.R. Co. v. Yingling,* 148 Md. 169, 129 A. 36 (1925). In order for a special relationship between police officer and victim to be found, it must be shown that the local government or the police officer affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim's specific reliance upon the police protection. *See Williams v. State,* 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137, 140 (1983); *Morgan v. District of Columbia, supra,* 468 A.2d at 1313–15; *Florence v. Goldberg,* 44 N.Y.2d 189, 196–97, 404 N.Y.S.2d 583, 587, 375 N.E.2d 763, 767 (1978); *Morris v. Muser, supra,* 478 A.2d at 940; *Chambers-Castanes v. King County,* 100 Wash.2d 275, 669 P.2d 451, 458 (1983).

■ Appellant argues that the circumstances of this case imposed a special duty upon Officer Freeberger and Anne Arundel County to protect appellant. We disagree. Appellant has alleged no facts which show that Officer Freeber-

---

dangerous propensities, and those who have custody of others. *See Lamb v. Hopkins,* 303 Md. 236, 492 A.2d 1297 (1985); *Restatement (Second) of Torts* §§ 316 to 320. In order for such a relationship to be found between police and perpetrator, it must be alleged that there was some type of ongoing custodial relationship between the police officer and the actor. *Lamb v. Hopkins, supra; see Jackson v. Clements,* 146 Cal.App.3d 983, 194 Cal.Rptr. 553, 555 (1983). Such was not the case sub judice. As the court in *Bailey v. Town of Forks,* 38 Wash.App. 656, 688 P.2d 526, 531 (1984) noted:

a police officer's mere contact with an intoxicated person hardly creates the same type of relationship as exists between a psychiatrist and his patient or a custodian and his inmate. . . . [S]uch a fleeting contact fails to rise to a "special relationship" which would justify imposing an affirmative duty of care to prevent an intoxicated person from causing harm to others.

ger affirmatively acted specifically for appellant's benefit or that Freeberger's actions induced appellant's reliance upon him. Although it is true that Freeberger affirmatively acted in approaching the driver and advising him to cease driving that evening, these actions on Freeberger's part created no special relationship with appellant.

The majority of jurisdictions which have addressed the issue of special relationship under similar circumstances agree with us, that no special relationship exists between the officer and the person injured by the drunk driver. In *Jackson v. Clements*, 146 Cal.App.3d 983, 194 Cal.Rptr. 553 (1983), the defendant officers were called to investigate a party where alcohol was being served to minors. The officers knew that two of the minors had been drinking, that based on their observations, the minors were too intoxicated to drive and that the minors intended to drive themselves away from the party. Nevertheless, the officers failed to detain either driver. Both drivers were involved in accidents thereafter, and the injured parties brought suit against the officers. The *Jackson* court stated that the police officers owed no duty to the injured person unless a "special relationship" had been created. The court held that no special relationship between the victim (only one of the victims raised this issue) and the officers was created because "[t]he officers did not create the peril to [the victim], they did not voluntarily assume a duty to protect her, they made no promise or statement to induce her reliance, nor did they alter the risk to her that would have otherwise existed." 196 Cal.Rptr. at 556.

The Supreme Court of Florida addressed the issue of public duty and special relationship recently in *Everton v. Willard*, 468 So.2d 936 (1985). In *Everton*, a sheriff's deputy had stopped a driver for a minor traffic violation. The deputy recognized that the driver had been drinking alcohol, but the deputy did not charge the driver with an intoxicated driving offense. Instead, the deputy issued the

driver a citation for the traffic offense and permitted the driver to continue driving. Shortly thereafter, the driver was involved in a collision with the petitioners. The petitioners filed suit against the driver, the deputy, the sheriff's department and the county. The court stated:

> There has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted to a police officer to make an arrest and to enforce the law. This discretionary power is considered basic to the police power function of governmental entities and is recognized as critical to a law enforcement officer's ability to carry out his duties.... We recognize that, if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual.

*Id.* at 938. The court found no special relationship on the facts before it.

Similarly in *Crosby v. Town of Bethlehem,* 90 A.D.2d 134, 457 N.Y.S.2d 618 (1982), the court held that where an off-duty police officer observed and talked to an intoxicated guest of the officer's next door neighbor, and the officer later observed the guest drive away, neither the officer nor other officers alerted by the off-duty officer owed any special duty to a pedestrian struck and killed by the driver. *See also Evers v. Westerberg,* 38 A.D.2d 751, 329 N.Y.S.2d 615 (1972) (where officer who investigated accident scene failed to take drunk driver into custody, and drunk driver drove away and killed plaintiff's decedent, municipality owed no special duty to decedent).

In *Bailey v. Town of Forks,* 38 Wash.App. 656, 688 P.2d 526 (1984), a police officer responded to an altercation involving a driver whom the officer knew or should have known was drunk. Instead of detaining the driver, the officer ordered him to leave the area. The court discussed the "public duty" doctrine and declared that it would find a "special relationship" in any given case where:

(1) There is some form of privity between the police department and the victim that sets the victim apart from the general public and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim.

688 P.2d at 529. The court noted that neither factor was present before it and held that there was no special relationship created between the police officer and the victim.

Appellant cites *Irwin v. Town of Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984) to support its position that a special relationship had been created here. In *Irwin*, town police officers stopped a driver who was apparently intoxicated and then allowed the driver to continue driving. The driver later negligently caused a head-on collision, killing several members of a family. The Supreme Judicial Court of Massachusetts, over a strong dissent, found a special relationship under the facts before it between the police officer and the victims. The court based its holding upon the foreseeability of the consequences of the police officer failing to detain the drunk driver as well as the fact that the state's statutes dealing with intoxicated persons "evidence a legislative intent to protect both intoxicated persons and other users of the highway." 467 N.E.2d at 1304.

■ Appellant urges us to follow *Irwin* and to hold that § 16–205.1(b)(2) of the Transportation Article evinces the intent of our legislature to impose civil liability upon a police officer who fails to comply with the section. We do not see that the legislature intended § 16–205.1 to provide a civil cause of action for third parties injured by drunk drivers, and we decline to so hold. The purpose of § 16–205.1(b)(2) clearly is to set forth procedures for a police officer who has stopped or detained a driver whom he believes to be intoxicated. Our statutory provisions concerning drunk driving embody a legislative intent "to dis-

courage persons from drinking and driving, to enable law enforcement officers to identify those who drink and drive, and to afford certain rights to drivers who disclaimed that they were driving while drunk." *Willis v. State, supra,* 302 Md. at 374, 488 A.2d at 177. Of course, the underlying concern of the statutes is the safety of the public. In order to impose a special relationship between police and victim, and thereby to create a duty in tort, however, a statute must "set forth mandatory acts clearly for the protection of a *particular class* of persons rather than the public as a whole." *Morgan, supra,* 468 A.2d at 1314 (*quoting Cracraft* [*v. City of St. Louis Park* ], *supra,* 279 N.W.2d [801] at 807 [1979]; emphasis supplied); *see Florence v. Goldberg,* 44 N.Y.2d 189, 404 N.Y.S.2d 583, 375 N.E.2d 763 (1978) (where police regulations set forth procedures to be followed in supervision of crosswalks and police assigned guards to crosswalk, police voluntarily assumed "special relationship" with special class of persons—school children).

We believe that if the legislature intended to impose civil liability upon a policeman who failed to comply with § 16–205.1(b)(2), it would have so stated. *Cf.* Md.Code (1957, 1984 Repl.Vol.), §§ 19–101 and 19–102 of the Transportation Article (imposing civil liability upon police officer for damages and injuries caused by officer directing driver of motor vehicle to assist him in enforcing law or commandeering vehicle used in roadblock). Because there was no special relationship created by Freeberger's acts or by statute, Officer Freeberger owed no duty in tort to appellant.

Accordingly, we shall affirm the judgment of the circuit court.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.