5 A.3d 1121

**Nicole PACE, et al.**

v.

**STATE of Maryland, et al.**

**No. 496, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Sept. 29, 2010.

Philip J. Sweitzer, Columbia, for Appellant.

William H. Fields (Douglas M. Gansler, Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, MEREDITH, J. FREDERICK SHARER, (Retired, Specially Assigned), JJ.

MEREDITH, J.

Appellant Liana Pace ("Liana"), minor daughter of appellant Nicole Pace ("Ms. Pace"), suffered a severe allergic reaction to a peanut butter sandwich that was provided to her as part of the school lunch program at the public school in Frederick County where she was attending kindergarten. The meal was subsidized by federal funds administered by the State of Maryland pursuant to the National School Lunch Act ("NSLA"). Ms. Pace (on behalf of Liana and herself) sued the State of Maryland, the Maryland State Department of Education ("MSDE"), and the Superintendent of Schools for the

State of Maryland (collectively referred to as "the State defendants"), appellees, in the Circuit Court for Frederick County, alleging that negligence on the part of the State defendants in failing to ensure that Liana's school had an effective program in place to "flag" students with food allergies was a proximate cause of Liana's injuries. The complaint also named several other defendants who are not parties to this appeal. The count directed at the State defendants sought monetary damages in the amount of $200,000. The circuit court granted a motion to dismiss the State defendants. After the claims against the co-defendants were settled, this appeal followed.

Appellants present the following question:

Whether the trial court erred in granting the State Defendants' Motion to Dismiss, either procedurally or otherwise, finding that the State had no duty of care to the Plaintiff, rather than a special or statutory duty to ensure her special dietary needs were met and to protect her from discrimination on the basis of either race or disability in the administration of the school lunch program[.]

For the reasons stated herein, we answer the question in the negative and affirm.

## FACTS AND PROCEDURAL HISTORY

Liana was enrolled at Frederick County's Hillcrest Elementary School ("Hillcrest") as a kindergarten student in 2005. In September, her mother, Ms. Pace, expressly advised the school administration that Liana was extremely allergic to peanuts. For use in case Liana suffered an allergic reaction, Ms. Pace provided the administrators at Hillcrest with an "Epi-pen," *i.e.*, a hypodermic needle used to inject a dose of the hormone epinephrine to counter an anaphylactic reaction to an allergen.

On November 9, 2005, Liana went to the school cafeteria for lunch. Because she did not have adequate funds on deposit in her cafeteria account to purchase the regular menu items offered, the cafeteria staff served her a "credit" lunch. This

lunch was subsidized by federal funds provided to the school pursuant to the National School Lunch Program. Under the NSLA, the program is administered by the State of Maryland.

When the cafeteria staff served Liana a peanut butter sandwich, the child objected that she was not permitted to eat it. But after one of the cafeteria workers scolded Liana and commanded her to eat the sandwich, the child obeyed.

Liana immediately began to experience an anaphylactic reaction. Her airway, lips, and eyelids swelled, and she became disoriented and lethargic. Half an hour later, when the school authorities contacted Ms. Pace by telephone, they were instructed to administer the Epi-pen. The school made the injection and called for an ambulance. Liana was transported by ambulance to the Frederick County Memorial Hospital, where she was stabilized, treated, and released to Ms. Pace.

According to the complaint, as a result of her ordeal, "Liana began to experience symptoms of extreme psychological perturbation and post-traumatic distress, [and] began to display regressive behavior such as thumb sucking and withdrawal." Liana "complained of fear of returning to school." Furthermore, when she went to the school lunchroom after the incident involving the peanut butter sandwich, she was seated alone, at a separate table pushed up against a wall, with a sign above her head declaring her peanut allergy. Liana interpreted this treatment as punishment, which caused her to blame herself for the incident, exacerbating her psychological trauma. Around the end of 2005, Ms. Pace withdrew Liana from Hillcrest, and the pair moved to Michigan.

On November 8, 2006, appellants filed a complaint in the Circuit Court for Frederick County. In addition to the State defendants, other defendants ("the Board Defendants") were the Board of Education for Frederick County, Linda D. Burgee (Frederick County Public Schools Superintendent), Grason Jackson (Hillcrest Principal), and three unnamed cafeteria staff members. The complaint asserted a variety of claims against the Board defendants, but named the State

defendants only in a single count alleging negligence. The pertinent specific allegations were as follows:

19. Defendants, the State of Maryland, Grasmick and the Maryland State Department of Education are under a regulatory duty pursuant to COMAR 13A.06.01.01 to administer the State's public school lunch programs in accordance with the provisions of the National School Lunch Program Act, codified as amended at 42 U.S.C. § 1751 *et seq.* (2006). The statutory provisions of the Act impose an affirmative duty on the State of Maryland to tailor school lunch program menus and foods offered to individual students according to their "individual dietary and medical" needs. 42 U.S.C. § 1758 (2006). The Code of Federal Regulations also requires monitoring by the states to ensure compliance with the statute. 7 C.F.R. § 15(b); 7 C.F.R. § 210.10(g)(1).

20. The explosive nature of peanut allergy, moreover, is specifically well-known to the State, which has developed extensive policies for the management of anaphylactic reactions; however, the State has not applied these metrics and administrative strategies to the management of individual dietary needs of students in school lunch programs, statewide. The State, therefore, has breached its statutory duty under the National School Lunch Program Act. This is all the more egregious, because the State has an extensive policy for after-the-fact management of anaphylactic reactions, yet no specific administrative protocol in place to minimize dietary exposures in school lunch programs so such exposures do not occur....

21. As a result of the State's negligence, school administration and cafeteria staff at the Hillcrest Elementary School did not have the proper dietary "flagging" regimen or administrative program in place, to notify cafeteria workers of Liana's extreme allergic sensitivity.

22. As a result of the State's negligence, school administration at the Hillcrest Elementary School did not have a uniform plan implemented to inform cafeteria workers, who served Liana the very foodstuff she could not tolerate,

which produced the life-threatening anaphylactic reaction and accompanying fear and severe emotional distress.

On February 27, 2007, the State defendants filed a "Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment." The State defendants argued that they were not proper parties to the action because responsibility for school meal content resided at the county level. The State defendants also argued that they were protected by sovereign immunity.

On March 15, 2007, the plaintiffs filed a response to the motion for dismissal/summary judgment. On the same day, the plaintiffs also filed a first amended complaint, which stated in the introductory paragraph that it was being filed "to correct typographical errata in the original Complaint" and that, for the most part, the "allegations of the First Amended Complaint . . . incorporate the allegations of the original Complaint essentially verbatim." The amendments did not materially alter plaintiffs' negligence claim against the State defendants, as quoted above.

In the opposition to the State defendants' motion, appellants argued that "the specific statutory duty, imposed upon the State, to administer school lunch and free feeding programs in accordance with individual student dietary and medical needs flows directly to the State from the federal Government under 42 U.S.C. § 1751 *et seq.* (2006) and the implementing regulations. . . ." Appellants quoted 7 C.F.R. § 210.3(b) (2006 edition), which provides: "Within the States, the responsibility for the administration of the Program in schools, as defined in § 210.2, shall be in the State educational agency." With respect to food allergies, appellants quoted 7 C.F.R. § 210.10(g)(1), which contains this statement:

> Schools must make substitutions in lunches and afterschool snacks for students who are considered to have a disability under 7 C.F.R. part 15b and whose disability restricts their diet. Schools may also make substitutions for students who do not have a disability but who cannot consume the regular

lunch or afterschool snack because of medical or other special dietary needs.

According to the appellants, "while the State may delegate core responsibilities for the day to day operation of the school lunch program, it can neither delegate away the responsibility of setting policy for administering the program, nor can it delegate away the responsibility of monitoring operational compliance with federal regulations. 7 C.F.R. § 210.18 (2006)." The appellants further argued that "the extensive federal and state statutory and regulatory regime governing the administration of school lunch programs here, clearly establishes the State's special duty or relationship with the Plaintiff, Liana Pace."

On June 20, 2007, the circuit court held a hearing on the State defendants' motion. The court subsequently issued a written opinion and order, docketed on July 2, 2007, dismissing the first amended complaint with prejudice as to the State defendants. The court explained:

The State of Maryland [*i.e.*, the State defendants] filed the Motion to Dismiss, which is the subject of this opinion. The State alleges that the other named Defendants [*i.e.*, the Board defendants] are not agents of the State and, therefore, the State cannot be held liable for their actions. Further, the State asserts the doctrine of sovereign immunity. Plaintiff contends that the State has a statutorily imposed duty to every child in Maryland to administer school lunch and a free feeding program in consideration of a child's dietary needs. This Court finds that the State did not have a duty to Liana, and therefore, will not address the issue of sovereign immunity.

In support of its argument, the State cites *Pendelton* [sic] *v. State of Maryland,* 398 Md. 447 [921 A.2d 196] (2007). The Court finds this case instructive to the case *sub judice.* In *Pendelton,* a father filed a complaint as next friend of his son, Corey, against the State of Maryland, and various other agencies throughout Maryland. The complaint alleged negligence and battery. The facts of the case are as follows.

Corey was placed in a temporary shelter by the Department of Social Services. While being sheltered, Corey was sexually and physically abused by his roommate. Upon the operators of the group home learning of the abuse they assured that no further contact was made between Corey and his roommate. In its complaint, the plaintiff alleged that the State owed a duty to Corey to keep him safe while he was sheltered. The plaintiff asserted that the State knew or should have known of the sexual tendencies inhabited [sic] by Corey's roommate. There was no factual allegation that the State knew or should have known of the roommate's tendencies. The State filed a Motion to Dismiss arguing that the complaint failed to state a claim upon which relief could be granted. Plaintiff argued that the State had a non-delegable duty imposed both by the statute, and the special relationship established between the State and Corey by the State having placed him in foster care. The trial court granted the State's Motion, and the Plaintiff appealed. The Court of Appeals affirmed the dismissal of the case, affirming that the State had no such duty or relationship with Corey.

The Court, at length, discussed the role that the State had in relationship to Corey and what its duty was towards him. The public duty doctrine is "when a statute or common law 'imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort.' " *Id.* at 463 [921 A.2d 196] quoting *Muthukumarana v. Montgomery County*, 370 Md. 447, 805 A.2d 372 (2002). A "special relationship" is an exception to the public duty doctrine. *Id.* at 464 [921 A.2d 196]. This relationship, and subsequent duty, is established when it can be shown that the local government "affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim's specific reliance ..." *Id.* quoting *Ashburn v. Anne Arundel County*, 306 Md. 617, 510 A.2d 1078 (1986). Even though the State affirmatively acted to remove Corey from his home as per a statute, this did not give rise to a

special duty. *Id.* Plaintiff in the case *sub judice* concedes that the State **did not have** a special relationship with Plaintiff giving rise to a special duty.

In the case *sub judice,* it is not disputed that the State had a statutory obligation to establish a free feeding program and to ensure that it was implemented in the schools. This program includes a provision to ensure that the needs of children with special dietary needs are met. However, the State did not have a specific statutory duty to control the acts of the school employees or to ensure that each child received the correct food. Plaintiff asserts that Maryland Annotated Code, Education Article, § 7–401, in conjunction with COMAR and multiple Federal Regulations, imposes a specific duty upon the State to protect children such as Liana. This Court finds no basis for the allegation that the State failed to act as statutorily mandated. Based on *Pendleton,* this Court finds that the State did not have a specific duty imposed by statute to ensure that Liana did not eat peanuts nor was a special relationship ever established to trigger such a duty.

For the reasons stated above, it is ORDERED this *26th* day of June, 2007 by the Circuit Court for Frederick County, Maryland, that Defendant State of Maryland's Motion to Dismiss is hereby GRANTED; and it is further

ORDERED, that the counts against Defendant State of Maryland be DISMISSED WITH PREJUDICE.

On July 12, 2007, the plaintiffs filed a motion to alter or amend the judgment, which the court denied on August 13, 2007.

On December 27, 2007, the plaintiffs filed a second amended complaint, adding new defendants, new claims against the Board defendants, and new claims against the State defendants. The second amended complaint alleged that the State defendants had allowed some of the Board defendants to physically isolate Liana in her school after her allergic reaction, in violation of their duty under 7 C.F.R. § 210.23(b).

On January 15, 2008, the State defendants filed a motion to dismiss the second amended complaint, on the grounds that

the plaintiffs failed to obtain leave to amend after the dismissal with prejudice, as required by Maryland Rule 2–322, and that the plaintiffs' new claim against the State defendants was barred by *res judicata.* On February 20, 2008, the court held a hearing on the motion and dismissed the second amended complaint. The order was docketed on February 25, 2008.

On that same day, the plaintiffs reached a settlement agreement with the remaining defendants. On March 25, 2008, those parties filed a joint stipulation of dismissal with prejudice as to the claims against the remaining parties. The court docketed the stipulation on March 28, 2008, thereby rendering the orders as to the State defendants final. *See Tierco Md., Inc. v. Williams,* 381 Md. 378, 393–94, 849 A.2d 504 (2004). This appeal followed.

### DISCUSSION

As a preliminary matter, appellants argue that the circuit court should not have considered the State defendants' motion to dismiss because the appellants had filed an amended complaint between the date the State filed the motion and the date of the hearing on the motion. This argument was not raised at the time of the hearing on the motion (or at any other point during the circuit court proceedings). Consequently, the argument is not preserved for our review. Maryland Rule 8–131(a).

Appellants' primary argument is that the State defendants had a statutory duty to children with food allergies to take some action to prevent schools from feeding those children lunches containing the allergens. Appellants argue in their brief: "In this case, the State had a duty to [Liana] to protect her as a member of a protected class of individuals, because the complained of injury and the nature of the negligence alleged went specifically to the type of injury the legislation was designed to prevent." Our reading of the NSLA, however, leads us to conclude that it does not impose upon the State defendants a duty that would make the State defendants liable to compensate Liana for the injuries she

suffered when the Hillcrest cafeteria worker fed her a peanut butter sandwich.

The Court of Appeals has held that, in cases such as this one, in which there is no dispute as to the underlying material facts, the question of whether a defendant had a duty to prevent the plaintiff's injuries can be decided as a matter of law, and appellate review of that issue is *de novo*. In *Muthukumarana v. Montgomery County*, 370 Md. 447, 472, 805 A.2d 372 (2002), Judge Harrell wrote for the Court:

> In *Liberto v. Holfeldt*, 221 Md. 62, 67, 155 A.2d 698, 701 (1959), we recognized that "when the facts are not disputed and it is certain that reasonable minds could draw but one inference from such facts," the issues of duty and causation "may be resolved as a matter of law." *See also Dersookian v. Helmick*, 256 Md. 627, 631, 261 A.2d 472, 473 (1970) (quoting *Liberto* ). We recently reaffirmed this notion in *Valentine v. On Target, Inc.*, 353 Md. 544, 727 A.2d 947 (1999), and explained that, "[g]enerally, whether there is adequate proof of the required elements needed to succeed in a negligence action is a question of fact to be determined by the fact finder; but, the existence of a legal duty is [a] question of law to be decided by the court." *Valentine*, 353 Md. at 549, 727 A.2d at 949. *See also Bobo v. State*, 346 Md. 706, 716, 697 A.2d 1371, 1376 (1997) ("The existence of a duty is a matter of law to be determined by the court and, therefore, is an appropriate issue to be disposed of on motion for dismissal.").

*Accord Pendleton v. State*, 398 Md. 447, 461, 921 A.2d 196 (2007) ("Whether a legal duty exists is a question of law, to be decided by the court.").

Because the State defendants had no direct involvement in the incident relative to Liana's allergic reaction, and none of the school personnel were State employees, appellants have not alleged that the State defendants are vicariously liable for the errors or omissions that led to Liana being fed an inappropriate school lunch. Instead, the appellants argue that the State defendants committed independent acts of actionable

negligence by failing to perform the State defendants' duties under the National School Lunch Act and related regulations.

Appellants argue that a statutory duty is imposed upon the State defendants by 42 U.S.C. § 1758(a). Although that subsection of the NSLA does mention special dietary needs, it does not mandate that the State take any particular action to ensure that a child such as Liana is never fed any food containing peanuts. Section 1758(a)(1) provides:

**§ 1758. Program requirements**

**(a) Nutritional requirements**

(1)(A) Lunches served by schools participating in the school-lunch program under this chapter [42 U.S.C. §§ 1751 et seq.] shall meet minimum nutritional requirements prescribed by the Secretary on the basis of tested nutritional research, except that the minimum nutritional requirements—

(i) shall not be construed to prohibit the substitution of foods to accommodate the medical or other special dietary needs of individual students; and

(ii) shall, at a minimum, be based on the weekly average of the nutrient content of school lunches.

(B) The Secretary shall provide technical assistance and training, including technical assistance and training in the preparation of lower-fat versions of foods commonly used in the school lunch program under this chapter, to schools participating in the school lunch program to assist the schools in complying with the nutritional requirements prescribed by the Secretary pursuant to subparagraph (A) and in providing appropriate meals to children with medically certified special dietary needs. The Secretary shall provide additional technical assistance to schools that are having difficulty maintaining compliance with the requirements.

In addition to this statutory provision in the NSLA, appellants cite 7 C.F.R. § 210.10. This regulation, captioned "Nutrition standards and menu planning approaches for lunches and requirements for afterschool snacks," consumes approximately

15 pages of the C.F.R. It addresses special dietary needs in subparagraph (g), which states:

> *(g) What exceptions and variations are allowed in meals?—(1) Exceptions for medical or special dietary needs.* Schools must make substitutions in lunches and afterschool snacks for students who are considered to have a disability under 7 CFR part 15b and whose disability restricts their diet. Schools may also make substitutions for students who do not have a disability but who cannot consume the regular lunch or afterschool snack because of medical or other special dietary needs. Substitutions must be made on a case by case basis only when supported by a statement of the need for substitutions that includes recommended alternate foods, unless otherwise exempted by FNS [*i.e.,* the United States Department of Agriculture's Food and Nutrition Service]. Such statement must, in the case of a student with a disability, be signed by a physician or, in the case of a student who is not disabled, by a recognized medical authority.

Appellants also direct the Court's attention to Maryland Code (1978, 2008 Repl.Vol.), Education Article, § 7–401, which provides:

### § 7–401. School health program

(a) *Duty of county board.*—With the assistance of the county health department, each county board shall provide:

(1) Adequate school health services;

(2) Instruction in health education, including the importance of physical activity in maintaining good health; and

(3) A healthful school environment.

(b) *Development of public standards and guidelines.*—The Department of Education and the Department of Health and Mental Hygiene jointly shall:

(1) Develop public standards and guidelines for school health programs; and

(2) Offer assistance to the county boards and county health departments in their implementation.

(c) *Designation of a school health services program coordinator.*—

(1)(i) Each county board shall designate a school health services program coordinator.

(ii) A county board may authorize the county health department to designate the school health services program coordinator.

(2) The school health services program coordinator shall:

(i) Implement State and local health policies in the public schools;

(ii) Ensure that public schools adhere to local health services guidelines; and

(iii) Communicate State and local health policies to the parents and guardians of public school students.

(3) The county board shall grant the school health services program coordinator the authority to carry out the provisions of this subsection.

(4) The Department of Education shall conduct at least two meetings annually with all school health services program coordinators in the State.

Despite appellants' arguments, we are not persuaded that these statutes impose a duty upon the State defendants that would make them liable for failing to ensure that no cafeteria worker ever fed peanut butter to a child who is allergic to peanuts. We have been unable to find any reported case anywhere in the country in which a student has sued a state for monetary damages to compensate for a food-related injury that was allegedly caused by a violation of either the NSLA or regulations adopted pursuant to that statute.[1]

---

**1.** *See generally* Heather Martone, Note and Comment, *2.2 Million Children Left Behind: Food Allergies in American Schools—A Study of the Food Allergy and Anaphylaxis Management Act,* 18 J. OF LAW & POLICY 775, 777 (2010) ("There is currently no federal law establishing guidelines for food allergies in American schools."); Michael Borella, Note, *Food Allergies in Public Schools: Toward a Model Code,* 85 CHI-KENT L.REV. 761, 769 (2010) (observing: "In *Land v. Baptist Medical Center,*

We found one case which held in another context that the NSLA does not create a private cause of action. In *Great Lakes Consortium v. Michigan*, 480 F.Supp.2d 977 (W.D.Mich.2007), the plaintiff was a consortium of public school districts that sued the State of Michigan for alleged violations of the state's obligations under the NSLA. In granting the motion to dismiss for failure to state a claim, the court observed, *id.* at 981: " 'the "central inquiry" is "whether Congress intended to create, either expressly or by implication, a private cause of action." ' *Care Choices [HMO v. Engstrom* ], 330 F.3d [786,] at 789 [ (6th Cir.2003) ] (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979))." The court continued: "The inquiry requires both that Congress intended to confer a private right on a particular beneficiary, but also that Congress intended to confer a private remedy." *Id.* The court concluded: "Even if Plaintiff may demonstrate a violation of federal law by the State's actions to strip local school district preferences in delivery systems, it cannot demonstrate that the statute was intended to create the requisite enforceable right." *Id.* at 983. The plaintiff argued that, "[a]s a consequence of the extensive responsibilities imposed by the regulations, . . . a private right of action must be inferred." *Id.* The court disagreed, stating that "an enforceable right may not be inferred from regulations alone. . . . Inasmuch as . . . the statutory text is inadequate to create a private enforceable

---

[164 F.3d 423, 425 (8th Cir.1999),] . . . the Eighth Circuit held that a child with a peanut allergy was not 'substantially limited' in her ability to eat and breathe, despite the child having a record of suffering from allergic reactions when she ingested peanuts. . . . No other federal appellate court has directly addressed the issue of food allergies as a disability."); Donald T. Kramer, Annotation, *Construction and application of the National School Lunch Act and Child Nutrition Act of 1966*, 14 A.L.R. FED. 634 (1973, 2008 Supp.). *Soter v. Cowles Publishing Company*, 162 Wash.2d 716, 174 P.3d 60 (2007), involves an incident in which the local school district fed a lunch containing peanuts to a student, with fatal results, and later settled a suit for wrongful death. But there is no indication that the NSLA was alleged to be the basis for liability.

right, no such right may be implied from the regulations." *Id.* at 984.

It is of course true that appellants did not frame their complaint against the State defendants as a claim asserted under the NSLA, but their claim of negligence is nevertheless based upon the appellants' theory that the State defendants breached a duty they owed to Liana under the NSLA and its regulations. We agree with the circuit court's conclusion that the duties the NSLA imposes upon the State are owed to students generally, and not to individual students who have special dietary needs.

Our conclusion is supported by *Pendleton, supra,* and *Muthukumarana, supra,* two recent cases in which the Court of Appeals held that certain statutes did not give rise to a duty to individual tort plaintiffs. In *Pendleton,* a ten-year-old child was removed from his mother's custody by the Baltimore City Department of Social Services, a State agency. The child was placed in a group foster care home, where he was required to share a room with a sixteen-year-old boy who sexually and physically abused him. The abused child and his parent sued the State and the social services agency, alleging that their negligence was a proximate cause of the child's injuries. The complaint alleged that the State and its agency owed a duty to protect the child from the abuse by the roommate. The Pendletons contended that the duty arose from a statute that required group homes to comply with State licensing laws, and from regulations relative to such homes. 398 Md. at 456–57, 921 A.2d 196. The circuit court dismissed the complaint.

The Court of Appeals affirmed the dismissal on the basis of the public duty doctrine, explaining, *id.* at 463–64, 921 A.2d 196:

> This Court discussing the "public duty doctrine," has stated: "when a statute or common law 'imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort.' " *Muthukumarana v. Montgomery County,* 370 Md. 447, 486, 805 A.2d 372, 395 (2002) (*quoting* Dan B.

Dobbs, *The Law of Torts* § 271 (2000) (footnote omitted)). An example, is the " 'duty' owed by the police by virtue of their positions as officers is a duty to protect the public." *Ashburn* [*v. Anne Arundel County,* 306 Md. 617] at 628, 510 A.2d [1078] at 1084 [ (1996) ]; *Muthukumarana,* 370 Md. at 486, 805 A.2d at 395. In *Muthukumarana,* we explained: "Pursuant to the doctrine, therefore, police officers ordinarily may not be held liable for failure to protect specific persons because they owe no duty, as the first element of a negligence action requires, to those individuals." 370 Md. at 486–87, 805 A.2d at 395. It is clear, however, that there are limitations to the public duty doctrine, "[s]pecifically, it 'has no application when the court concludes that a statute or court order has created a *special duty* or specific obligation to a particular class of persons rather than to the public at large.' " *Id.* at 487, 805 A.2d at 396 (*quoting* Dobbs, *supra,* § 271 (emphasis added)).

A "special relationship" may arise between two parties, constituting an exception to the public duty doctrine. *Ashburn,* 306 Md. at 628, 510 A.2d at 1083. Thus, in the context of a police officer, if it can "be shown that the local government or the police officer affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim's specific reliance upon the police protection," then a special relationship exists which satisfies the duty element of a negligence claim. *Ashburn,* 306 Md. at 631, 510 A.2d at 1085 (citations omitted); *Muthukumarana,* 370 Md. at 488, 805 A.2d at 396.

The Court of Appeals ruled in *Pendleton* that the public duty doctrine applied with respect to the statutory provision that stated "[t]he Department ... may not place a child in a residential group home or other facility that is not operating in compliance with applicable State licensing laws." The Court noted, *id.* at 467–68, 921 A.2d 196: "[T]here is no allegation, never mind evidence, showing that the State violated [Family Law Article] § 5–526(c) by placing the appellant with [the group home]." Similarly, in the present case, the

appellants have not alleged that the State violated the NSLA by permitting the Hillcrest school to serve lunches.

In *Muthukumarana, supra,* the Court of Appeals reviewed two cases in which claims had been asserted against local-government operators of emergency telephone service. The claimants alleged that negligence on the part of the 911 operators resulted in serious injuries. The Court held that the legal duty owed by 911 employees to callers is a public duty. 370 Md. at 490, 805 A.2d 372. The Court stated, *id.* at 492, 805 A.2d 372: "Pursuant to the public duty doctrine, therefore, a 911 employee generally owes no duty in tort for the negligent performance of his or her duties to an individual in need of emergency telephone services."

Similarly, in *Pulliam v. Motor Vehicle Administration,* 181 Md.App. 144, 955 A.2d 843 (2008), this Court held that the duty owed by the Motor Vehicle Administration with respect to screening and licensing drivers was a duty owed to the public rather than to individuals injured by poor drivers. We stated: "Since the duty created by the statute and regulations was owed to the public generally, the circuit court did not err in dismissing the claims against the MVA and [its Medical Advisory Board]." *Id.* at 187, 955 A.2d 843.

The appellants contend in this case that the NSLA and its regulations impose duties on the State that are specifically for the benefit of children with allergies, and those duties run not to the general public, but to a class of which Liana is a member. Unlike the cases that have recognized a special duty, however, here, the statutes and regulations upon which appellants base their claim of special duty are simply not phrased with the sort of specificity that supports the imposition of liability upon the State. We are unable to identify the specific words and phrases in the NSLA that appellants contend obligated the State defendants to take some specific action that would have prevented Liana being fed a peanut butter sandwich by local school personnel.

In contrast to the broad statements in the NSLA about special dietary needs, the statutory provisions in *Horridge v.*

*Department of Social Services,* 382 Md. 170, 854 A.2d 1232 (2004), required the State agency to take specific actions that were intended to benefit the individual child who was being abused. The Court of Appeals noted, *id.* at 187, 854 A.2d 1232, that, under the pertinent statutes requiring specific action, "the Legislature, in our view, *has* created a duty flowing to children specifically identified to DSS as being the subject of suspected abuse, and recognition of that duty would not make DSS a guarantor of the safety of those children or any other." The Court stated, *id.* at 183–85, 854 A.2d 1232 (footnote omitted):

The relevant statutes are those contained in title 5, subtitle 7 of the Family Law Article (FL), §§ 5–701 through 5–714. In the law itself, the Legislature declared that the purpose of that subtitle, captioned "Child Abuse and Neglect," was "to protect children who have been the subject of abuse or neglect by: (1) mandating the reporting of any suspected abuse or neglect; (2) giving immunity to any individual who reports, in good faith, a suspected incident of abuse or neglect; (3) requiring prompt investigation of *each reported suspected incident* of abuse or neglect; (4) causing immediate, cooperative efforts by the responsible agencies *on behalf of children who have been the subject of reports of abuse or neglect;* and (5) requiring each local department [of social services] to give the appropriate service in the best interest of *the abused or neglected child.*" (Emphasis added). FL § 5–702.

To achieve that purpose, FL §§ 5–704 and 5–705 require anyone who has reason to believe that a child has been subjected to abuse or neglect to notify either DSS or the appropriate law enforcement agency. The report may be oral or in writing and, insofar as reasonably possible, it must include the name, age, and home address of the child, the name and home address of the child's parent or other person responsible for the child, the whereabouts of the child, the nature and extent of the abuse or neglect, and any other information that would help determine the cause of the abuse or neglect and the identity of the person responsi-

ble for it. *See* FL §§ 5–704(c) and 5–705(d). The report, in other words, must be specific, so that the recipient can identify and locate the child and have some basis for launching an investigation. To encourage persons to make these reports, § 5–708 provides immunity from both civil liability and criminal penalty for any person who makes or participates in making such a report.

As noted, § 5–706 requires DSS to respond to a report of abuse. Section 5–706(a) provides, in relevant part, that "[p]romptly after receiving a report of suspected abuse or neglect ... the local department or the appropriate law enforcement agency, or both, if jointly agreed on, shall make a thorough investigation of a report of suspected abuse to protect the health, safety, and welfare *of the child or children.*" (Emphasis added). Section 5–706(b) requires DSS, "[w]ithin 24 hours after receiving a report of suspected physical or sexual abuse," to "(1) see the child; (2) attempt to have an on-site interview with the child's caretaker; (3) decide on the safety of the child, wherever the child is, and of other children in the household; and (4) decide on the safety of other children in the care or custody of the alleged abuser." The investigation must include "a determination of the nature, extent, and cause of the abuse" and, if abuse is verified, a determination of the identity of the persons responsible for it, a determination of the name, age, and condition of any other child in the household, an evaluation of the parents and the home environment, and a determination of any other pertinent facts and any needed services. FL § 5–706(c).

Further, the Court noted, *id.* at 185–86, 854 A.2d 1232 (footnote omitted):

COMAR 07.02.07.05 requires DSS to establish a process for ensuring that a report of suspected child abuse from any source is *immediately* directed to its child protective service unit. It requires DSS to have staff on call 24 hours a day, seven days a week, to "receive and take appropriate action on reports of suspected child abuse" and to ensure that the public has "a means of access to staff who are on-call after

normal office hours." Upon receipt of a report of suspected child abuse, DSS must "[i]mmediately notify the local law enforcement agency." Only if the reported incident "does not meet the definition of child abuse or neglect defined in Regulation .02B of this chapter" may DSS decline to initiate an investigation. COMAR 07.02.07.05E.

Based upon these specific statutory and regulatory requirements, the Court held in *Horridge* that there was a duty owed by the State agency to the individual victims of abuse. "This is not an obligation that runs to everyone in general and no one in particular. It runs to an identified or identifiable child or discrete group of children." *Id.* at 190, 854 A.2d 1232. The Court stated, *id.* at 193, 854 A.2d 1232:

> The Legislature meant for DSS and its social workers to act immediately and aggressively when specific reports of abuse or neglect are made, and the best way to assure that is done is to find that they *do* have a special relationship with specific children identified in or, upon reasonable effort, identifiable from, facially reliable reports of abuse or neglect and, subject to the State Tort Claims Act, to make them liable if harm occurs because they fail in their mandated duty.

If either Congress or the Maryland General Assembly intended a similar level of action by the State defendants with respect to peanut allergies in the school lunch programs, we cannot discern that intent. Accordingly, we conclude that the circuit court did not err in concluding that the NSLA does not impose a special duty upon the State defendants to exercise a greater degree of care for students with food allergies than the general level of care for health and safety the State defendants exercise for all students in public schools. Further, in the absence of any allegations of special interaction between the appellants and the State defendants, there was no basis for finding a duty created by a special relationship in this case. Therefore, the circuit court did not err in dismissing the claims against the State defendants.

With respect to the appellants' second amended complaint, which was filed without leave of court, near the discovery cutoff date, the circuit court granted the motion to dismiss on the grounds that no leave to amend had been requested (or granted), and there was no time for discovery remaining. In appellants' brief, they argue simply that the second amended complaint should not have been dismissed because the first amended complaint should not have been dismissed. They state: "Because the first dismissal with prejudice was error, Appellant does not reach the merits of the Court's reasoning here with respect to the whether she brought a wholly distinct and separate claim in the Second Amended Complaint." Because we disagree that the dismissal of the first amended complaint was error, we reject appellants' claim with respect to the second amended complaint.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**