*Carolyn Howard v. Ben Crumlin, et al.*, No. 1025, Sept. Term, 2017.
Opinion by Fader, J.

**NEGLIGENCE – PUBLIC DUTY DOCTRINE; SPECIAL RELATIONSHIP EXCEPTION**

Under the public duty doctrine, the appellant could not establish that a defendant police officer who failed to make contact with a 911 caller owed a duty enforceable in tort to the caller or a group of which the caller is a member. The special relationship exception to the public duty doctrine did not apply where there was no allegation that the officer and the caller ever met or communicated with each other or that any affirmative act by the officer induced reliance by the caller.

**IMMUNITY – PUBLIC OFFICIAL IMMUNITY; DISCRETIONARY VERSUS MINISTERIAL DUTIES**

Police officers enjoy common law public official immunity for negligent acts performed during the course of their discretionary, as opposed to ministerial, duties. An officer's determination regarding what degree of action or investigation might be necessary in responding to a 911 call is a paradigmatic case of a discretionary action involving the exercise of personal judgment in determining the manner in which the State's police power will be utilized.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1025

September Term, 2017

_____

CAROLYN HOWARD

v.

BEN CRUMLIN, et al.

_____

Beachley,
Shaw Geter,
Fader,

JJ.

_____

Opinion by Fader, J.

_____

Filed: November 28, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

Carolyn Howard, the appellant, presents the question whether a police officer may be held individually liable in tort for failing to make contact with an individual who placed a call for assistance to 911 to which the officer attempted to respond. We hold that Maryland law does not impose individual liability in tort in that circumstance.

## BACKGROUND[1]

In the early morning hours of February 19, 2014, Nicole Sade Enoch was in her apartment in Silver Spring. A male friend of a woman who was staying with Ms. Enoch may have been there as well. Shortly after 2:00 a.m., Ms. Enoch called 911.[2] In response, Montgomery County Police Officer Ben Crumlin was dispatched to the apartment building, attempted to enter, but found the door locked. He left without making contact with Ms. Enoch.

At some point, Ms. Enoch went to the roof of her apartment building and either jumped, fell, or was pushed off. Her body was discovered at 8:20 a.m. and she was pronounced dead at the scene.

Ms. Howard, who is Ms. Enoch's mother, brought suit for herself and on behalf of Ms. Enoch's estate in the Circuit Court for Montgomery County. The operative complaint for our purposes is the Fourth Amended Complaint, in which Ms. Howard brought claims

---

[1] We are reviewing the grant of a motion to dismiss. In doing so, we accept as true the facts stated in the operative complaint, do not consider any facts other than those stated in that complaint, and construe all inferences in favor of Ms. Howard. *Davis v. Frostburg Facility Ops., LLC*, 457 Md. 275, 284 (2018). At this procedural stage, the defendants' side of the story is neither told nor considered.

[2] The Fourth Amended Complaint does not contain any information about the content of the 911 call.

against Officer Crumlin and Montgomery County Chief of Police J. Thomas Manger for negligence and wrongful death.[3] Ms. Howard alleged that Officer Crumlin and Chief Manger owed a duty to Ms. Enoch that they breached by failing to investigate the 911 call, protect Ms. Enoch, enter the building and make contact with Ms. Enoch, maintain proper policies and procedures for responding to 911 calls, provide adequate training for responding to 911 calls, and monitor the response of officers to 911 calls. According to the complaint, these failures were the direct and proximate cause of Ms. Enoch's death.

The circuit court dismissed the claims against Officer Crumlin and Chief Manger on the ground that those defendants did not owe a duty to Ms. Enoch that was enforceable in tort. We affirm.

## DISCUSSION

"[T]he standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Blackstone v. Sharma*, 461 Md. 87, 110 (2018).

This appeal centers on two different legal doctrines that are distinct but too often confused: the public duty doctrine and public official immunity.[4] Each independently requires a ruling in favor of Officer Crumlin and Chief Manger. We discuss them in turn.

---

[3] The Fourth Amended Complaint also brought negligence and wrongful death claims against the owner and manager of Ms. Enoch's apartment building. Those claims are not at issue here.

[4] In her briefs, Ms. Howard conflates public official immunity with the public duty doctrine. By failing to distinguish between the two, she treats all three of her arguments—that Officer Crumlin was engaged in a ministerial, not a discretionary, act; that he created a special relationship with Ms. Enoch; and that he may have acted with gross negligence—as reasons why Officer Crumlin is not entitled to immunity. She does this in reliance on *Williams v. Mayor & City Council of Baltimore*, in which the Court of Appeals discussed

2

**I.      MS. HOWARD'S ALLEGATIONS FAIL TO SHOW THAT OFFICER CRUMLIN OR CHIEF MANGER OWED A DUTY TO MS. ENOCH THAT CAN BE ENFORCED IN TORT.**

The public duty doctrine provides that statutory or common law duties imposed on public officials or entities that are duties "to the public as a whole," and not to any particular group or individual, are unenforceable in tort. *Cooper v. Rodriguez*, 443 Md. 680, 714 (2015). Where it is applicable, the plaintiff cannot ordinarily establish that the defendant owed a duty to the plaintiff or a group of which the plaintiff is a member. Without such a duty, there can be no liability in tort. *Jones v. State*, 425 Md. 1, 19 (2012).

The seminal case applying the public duty doctrine is *Ashburn v. Anne Arundel County*, 306 Md. 617 (1986). There, a police officer found a drunk individual behind the wheel of a pickup truck in a parking lot with the engine running. *Id.* at 620. Rather than detain him, the officer told the driver to pull to the side and stop driving. *Id.* As soon as the officer left, the individual drove away and promptly hit a pedestrian. *Id.* The pedestrian, Mr. Ashburn, sued the officer for negligence.

The Court of Appeals held that Mr. Ashburn had failed to establish that the officer "owed him a duty in tort." *Id.* at 626. After discussing at some length the considerations

_____

the two doctrines together and referred to the special relationship exception as negating immunity. 359 Md. 101, 134-35, 144, 151 (2000). However, as Ms. Howard acknowledged at oral argument, the Court of Appeals in *Cooper v. Rodriguez* clarified that public official immunity and the public duty doctrine are separate doctrines and that the special relationship exception applies only to the public duty doctrine, not to public official immunity. 443 Md. 680, 714-19 (2015). As a result, we address Ms. Howard's special relationship argument in the context of the public duty doctrine, where it belongs, and her ministerial act and gross negligence arguments in the context of public official immunity, where they belong.

that can give rise to a duty, the Court invoked "the general rule that there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Id.* at 628. Absent such a special relationship "between police and victim, liability for failure to protect an individual citizen against injury caused by another citizen does not lie against police officers." *Id.* Instead, the duty owed by police officers "is a duty to protect the public" and any breach of that duty can and should be addressed not by a tort action but by "criminal prosecution or administrative disposition." *Id.*

The Court in *Ashburn* explained the rationale for this doctrine, borrowing approvingly from the District of Columbia Court of Appeals's decision in *Morgan v. District of Columbia*, 468 A.2d 1306 (D.C. 1983). Public officials involved in fighting crime make decisions in circumstances that are "fraught with uncertainty" and, therefore, "must have broad discretion to proceed without fear of civil liability in the unflinching discharge of their duties." *Ashburn*, 306 Md. at 629 (quoting *Morgan*, 468 A.2d at 1311 (internal quotation marks omitted)). In such circumstances, "the public interest is not served 'by allowing a jury of lay (persons) with the benefit of 20/20 hindsight to second-guess the exercise of a police [officer]'s discretionary professional duty. Such discretion is no discretion at all.'" *Id.* (quoting *Morgan*, 468 A.2d at 1311 (quoting *Shore v. Town of Stonington*, 444 A.2d 1379, 1381 (Conn. 1982))). To rule otherwise "would raise the spectre of civil liability for failure to respond" to every complaint, regardless of its credibility, and thus risk that decisions would be made not on the merits but "to eliminate the threat of personal prosecution by the putative victim." *Id.* (quoting *Morgan*, 468 A.2d

4

at 1311).  "Such a result historically has been viewed, and rightly so, as untenable, unworkable and unwise."  *Id.* at 629-30 (quoting *Morgan*, 468 A.2d at 1311).  As a result, the Court concluded, disciplinary proceedings and criminal prosecution for dereliction of duty are better suited remedies to review charges that officers breached their duties.  *Id.* at 630.

An exception to the public duty doctrine lies when a public official creates a special relationship with the victim "upon which [the victim] relied."  *Id.* at 630-31.  For such a relationship to exist, the public official must have "affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim's specific reliance upon the police protection."  *Id.* at 631.  No such special relationship existed in *Ashburn* as there was no allegation that the officer undertook any affirmative act of protection or that any statute imposed a specific duty enforceable by tort.  *Id.* at 631-32.

Two other public duty doctrine cases are especially important to our analysis here.  In *Muthukumarana v. Montgomery County*, 370 Md. 447 (2002), the Court of Appeals considered two separate cases alleging negligence by 911 operators.  Although the Court was careful not to draw an equivalence between the work of 911 operators and that of police officers, *id.* at 489-90, it recognized that many of the same policy concerns militated toward application of the public duty doctrine to 911 operators, including that creating a tort duty would effectively allow juries to determine how police resources should be allocated, *id.* at 490.  Thus, the Court concluded, "a 911 employee generally owes no duty in tort for the negligent performance of his or her duties to an individual in need of

5

emergency telephone services." *Id.* at 492. Applying the "special relationship test" from *Ashburn*, a plaintiff would have to show that a "911 employee affirmatively acted to protect or assist the specific individual, or a specific group of individuals like the individual, in need of assistance, thereby inducing the specific reliance of the individual on the employee." *Id.* at 496. As no such affirmative act or reliance existed in either underlying case, the Court affirmed the judgment for the defendants in both. *Id.* at 497-504.

Even more informative for our purposes is *McNack v. State*, 398 Md. 378 (2007), in which relatives of seven members of a family that were killed in the fire-bombing of a home brought a lawsuit alleging that Baltimore City had encouraged the members of the family to engage in behavior that led to the bombing—the reporting of drug activity—while knowing that the police could not protect them. *Id.* at 386. The plaintiffs alleged that a special relationship was created between the police and the family by virtue of the more than 100 calls to 911 the family had made, the fact that police were dispatched to the house on many occasions, and a claim that the police had told the family that they would be placed on a "special protection list." *Id.* at 399. The Court found that none of these things, individually or collectively, were sufficient to create a special relationship. *Id.* at 400-01. The Court specifically noted the absence of any sufficiently-pled allegation that the police officers who responded on those many occasions to the family's home "affirmatively acted for the [family's] benefit, that they did anything to induce the [] family to rely on them, or that they acted in any way differently than they would act responding to any complaint of any other member of the general public." *Id.* at 401. To the contrary,

6

responding "on the basis of a 911 call was part of the police officers['] public duty . . . ." *Id.*

Ms. Howard argues that the public duty doctrine does not apply here because Officer Crumlin created a special relationship with Ms. Enoch when he responded to the 911 call and, in doing so, "undertook the duty to act on Ms. Enoch's behalf." That argument is foreclosed by *McNack*. There, the Court of Appeals held that a series of 911 calls and police responses had not created a special relationship between the police and the family because there was no affirmative action by the police to provide any more protection to the family than to the public at large and no action that induced the family to rely on police protection. *Id.* The facts here are even more distant from the existence of a special relationship as Ms. Enoch and Officer Crumlin never communicated with each other in any way. Ms. Howard does not identify an affirmative action that Officer Crumlin took specifically to protect Ms. Enoch. His act of going to Ms. Enoch's apartment building in response to a 911 call, like the responses of the officers in *McNack*, was in performance of his duty to the public. Moreover, to give rise to a special relationship, Ms. Enoch would have had to have been aware of Officer Crumlin's affirmative act so as to have been induced into specific reliance on him. *Muthukumarana*, 370 Md. at 496. Here, there are no allegations that Ms. Enoch was aware of Officer Crumlin's existence, much less that she was aware of, or induced into specific reliance on, any affirmative act of his.

Ms. Howard's claim against Chief Manger fails for the same reasons. The sole factual allegation in the Fourth Amended Complaint related to Chief Manger is that he "was the chief of police employed by the Montgomery County Police Department." The

7

complaint does not allege any facts that would demonstrate that Chief Manger owed any duty to Ms. Enoch specifically, as opposed to the public at large.[5]

In the absence of a duty owed to Ms. Enoch, there can be no liability in tort to her. Because the allegations of the complaint fail to identify any duty owed by Officer Crumlin or Chief Manger to Ms. Enoch, the circuit court was correct to dismiss Ms. Howard's claims against them.[6]

## II. EVEN IF THEY OWED A DUTY, OFFICER CRUMLIN AND CHIEF MANGER ARE PROTECTED BY PUBLIC OFFICIAL IMMUNITY.

Even if Ms. Howard could succeed in establishing that Officer Crumlin and Chief Manger had owed a duty to protect Ms. Enoch, her claim would still fail because the officers are entitled to common law public official immunity. Public official immunity protects public officials—including police officers—who perform negligent acts during the course of their discretionary, as opposed to ministerial, duties. *Cooper*, 443 Md. at 713. "When applied to public officials, discretion is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience and uncontrolled by the judgment or conscience of others." *Id.* (quoting

---

[5] In light of our decision in favor of Chief Manger on other grounds, we do not discuss here the appellees' claim that the naming of Chief Manger as a defendant in the Fourth Amended Complaint was improper because it exceeded the scope of the leave the circuit court granted Ms. Howard in filing that complaint.

[6] Ms. Howard asserts that if a tort suit cannot be brought in this circumstance, then "police officers do not have a standard of care to follow." As discussed above, however, that is not the case. To the contrary, the Court of Appeals, joining the majority of other courts of last resort, has made a considered determination that the standard of care for police officers is best enforced through disciplinary proceedings and, if appropriate, criminal prosecution. *Ashburn*, 306 Md. at 630.

*Livesay v. Balt. County*, 384 Md. 1, 16 (2004)).  Public official immunity does not apply to acts undertaken with malice or, since *Cooper*, gross negligence.  *Cooper*, 443 Md. at 729.

Ms. Howard does not dispute that Officer Crumlin and Chief Manger are public officials who were acting within the scope of their official duties at all relevant times. Instead, she argues that (1) public official immunity does not apply because Officer Crumlin's duty to make contact with Ms. Enoch was ministerial, not discretionary, and (2) she should be permitted the opportunity to take discovery to see whether Officer Crumlin was grossly negligent.  Neither contention has merit.

First, Ms. Howard has not identified a ministerial act as to which Officer Crumlin's performance was allegedly deficient.  The Court of Appeals explored the difference between ministerial and discretionary acts in *James v. Prince George's County*, 288 Md. 315 (1980).  There, the Court found particularly apt the California Supreme Court's summary description in *Doeg v. Cook*, 126 Cal. 213 (1899), in which the California court characterized a ministerial duty as one that is "absolute, certain, and imperative, involving merely the execution of a set task," and a discretionary duty as one "to be exerted or withheld according to his own judgment as to what is necessary and proper." *James*, 288 Md. at 326-27 (quoting *Doeg*, 126 Cal. at 216).  The question, the Court stated, is not whether *any* discretion is involved in a particular act, but whether the act "involves an exercise of [the officer's] personal judgment [that] includes, to more than a minor degree, the manner in which the police power of the State should be utilized." *James*, 288 Md. at 327.

9

Here, Officer Crumlin's action at issue is his alleged failure to investigate further when he found that the entry to Ms. Enoch's apartment building was locked. That action—a police officer's determination regarding what degree of action or investigation might be necessary in responding to a particular situation—is a paradigmatic case of an action involving the exercise of personal judgment in determining the manner in which the State's police power will be utilized. It is akin to the decision of the officer in *Ashburn* whether to detain the drunk driver. 306 Md. at 627-28; *see also Livesay*, 384 Md. at 16-17 (finding discretionary the decision of a corrections officer regarding how to respond to an inmate's suicide attempt). The action Ms. Howard challenges is thus discretionary, not ministerial.

Ms. Howard argues that this is not so because "[w]hether to make contact with a 911 caller before leaving a scene is not a judgment call such that it falls within the discretion of the responding police officer." Instead, she contends, "this is a ministerial act that must be complied with," a fact she believes she may be able to prove in discovery, if allowed. However, she does not allege a single fact in the Fourth Amended Complaint or even in her appellate briefs that would support such a claim and at oral argument she conceded that there would be times when a responding officer would not be required to make contact with a 911 caller, including when—presumably in the judgment of the officer—the 911 caller could not be found. Moreover, even if Ms. Howard had alleged in her complaint that the Montgomery County Police Department had a "hard and fast rule" requiring in every case that a responding police officer make contact with a 911 caller before leaving the scene—which she did not—such a bald, conclusory statement could not defeat a motion to dismiss. *Davis v. Frostburg Facility Ops., LLC*, 457 Md. 275, 284-85

10

(2018) ("The pleader must set forth a cause of action with sufficient specificity—'bald assertions and conclusory statements by the pleader will not suffice.'") (quoting *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 497 (2014)).[7]

Second, Ms. Howard asserts that Officer Crumlin's and Chief Manger's actions may have constituted gross negligence and that she should be afforded the opportunity to take discovery to find out. Once again, however, these contentions fail both because (1) the Fourth Amended Complaint does not allege gross negligence and (2) the assertions made on appeal, even if they had been contained in the complaint, are bald and conclusory and, therefore, insufficient to survive a motion to dismiss.

Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper*, 443 Md. at 708 (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). One "is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist." *Id.* Taking all factual allegations in the Fourth Amended Complaint, and all inferences that can reasonably be drawn from them, in the light most favorable to Ms. Howard, the complaint still falls short of demonstrating conduct by Officer Crumlin or Chief Manger that was undertaken in reckless disregard of its

---

[7] As noted, the Fourth Amended Complaint does not contain any factual allegations at all with respect to Chief Manger's actions. To the extent that Ms. Howard intends to hold him responsible for the development of policies and procedures and for training Officer Crumlin, those are also discretionary, not ministerial, activities.

consequences. Indeed, the complaint does not even allege that either Officer Crumlin or Chief Manger had *any* knowledge regarding Ms. Enoch or her situation, nor does it identify what information might have been conveyed in the 911 call that could possibly have been communicated to Officer Crumlin. One cannot act in reckless disregard of consequences of which she or he is unaware.

Even if Ms. Howard had successfully identified a duty Officer Crumlin and Chief Manger owed specifically to Ms. Enoch, they would still be protected by public official immunity. For that reason as well, the circuit court did not err in dismissing the Fourth Amended Complaint as to Officer Crumlin and Chief Manger.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

12